IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


| | | |
|---|---|---|
| MELISSA WALLACE, as | ) | |
| Administratrix Ad Litem | ) | |
| of the Estate of Tony | ) | |
| Keith Wallace, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:08cv1009-MHT |
| | ) | (WO) |
| MARK JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff Melissa Wallace, as administratrix ad litem
of the estate of decedent Tony Keith Wallace, brings this
lawsuit against defendant Mark Jackson, a jailer at the
Geneva County, Alabama Jail.  Administratrix Wallace sues
Officer Jackson in his individual capacity, claiming that
Jackson violated decedent Wallace's Eighth and Fourteenth
Amendment rights, as enforced through 42 U.S.C. § 1983,
by being deliberately indifferent in two ways: by
ignoring the substantial risk that decedent Wallace would
commit suicide and by failing to stabilize him,

administer CPR to him, or call for medical assistance
upon discovering that he had hung himself in his cell.
Administratrix Wallace also brings a state-law claim for
wrongful death pursuant to § 6-5-410 of the 1975 Alabama
Code.   Jurisdiction is proper pursuant to 28 U.S.C.
§§ 1331 (federal question), 1343 (civil rights) and 1367
(ancillary).   Jackson asserts the defenses of qualified
immunity to the federal deliberate-indifference claims
and absolute immunity to the state-law wrongful-death
claim.

This case is now before the court on Officer
Jackson's motion to dismiss.   For the reasons that
follow, the motion will be granted in part and denied in
part.


I.  MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the
court accepts the plaintiff's allegations as true, Hishon
v. King & Spalding, 467 U.S. 69, 73 (1984), and construes

2

the complaint in the plaintiff's favor.  <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).   Generally, to survive a motion to dismiss, a complaint need not contain "detailed  factual  allegations,"  <u>Bell  Atl.  Corp.  v. Twombly</u>, 550 U.S. 544, 555 (2007), but rather "only enough facts to state a claim to relief that is plausible on its face."   <u>Id</u>. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, ___ U.S. ____, ____, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

Courts "must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."  <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1235 (11th Cir. 2003).  However,

"[t]o satisfy even the heightened pleading standard for § 1983 claims, [the plaintiff] need plead only 'some factual detail' from which the court may determine whether Defendants' alleged actions violated a clearly established constitutional right." Amnesty Intern'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009) (quoting Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992)).


## II. BACKGROUND

Administratrix Wallace's motion to dismiss contains very detailed factual information. Construed in her favor, these facts show that, on the afternoon of December 31, 2007, decedent Wallace was arrested in Geneva County, Alabama on charges of domestic violence and resisting arrest. Wallace was extremely drunk at the time and bleeding from his right ear. As he was being arrested, Administratrix Wallace (decedent Wallace's wife) informed the officers that her husband was suicidal

4

and had recently broken his neck.  Despite his neck injury, decedent Wallace repeatedly banged his head against the partition of the patrol car as he was taken away, and was so agitated that the arresting officer had to call for assistance in bringing him to the jail.

During the booking process, Wallace informed his jailers that he had recently been in a car accident and needed his medication.  Wallace also threatened to take his own life.  Jackson confirmed these threats by speaking over the phone to another jailer, Gary Guess, who verified that Wallace had previously attempted to commit suicide while incarcerated in Blount County, Alabama.

Eventually, Wallace calmed down so that the other officers were able to leave the jail.  Only Jackson and a matron, who oversaw the female inmates, remained. Jackson placed Wallace on 'suicide watch' in a cell where he would be as close as possible to Jackson and where Wallace could be monitored every few minutes.  Jackson

5

also asked the jail trustees (inmates given certain freedoms and responsibilities) to watch over Wallace.

Decedent Wallace threatened to kill himself if he were left in a cell alone, but Jackson refused to place Wallace in a cell with others because of his uncooperative and hostile behavior. Jackson also had Wallace change into standard orange coveralls and gave him a thick wool blanket, despite the jail's policy that suicidal inmates should not be allowed any items that could be used to fashion a loop.

It was approximately 6:10 p.m. when Jackson finally placed Wallace in the holding cell. At 6:12 p.m. Jackson checked on Wallace again and had a conversation with him. Shortly thereafter, inmates in another part of the jail began yelling because another inmate was complaining of chest pains. Jackson checked on this inmate and then called an ambulance. The ambulance arrived at 6:14 p.m. While the ambulance was at the jail, Jackson called jail administrator Carl Rowe to see if Wallace should also be

taken to the hospital.  He informed Rowe of Wallace's bleeding ear and hostile behavior, but he did not mention that Wallace had threatened suicide and had been placed on suicide watch.  Rowe advised Jackson that Wallace did not need to be taken to the hospital.

At 6:15 p.m. the inmate trustees went to the laundry room to play dominoes, leaving Wallace alone and unobserved in his cell.  At 6:18 p.m., Jackson discovered that Wallace had thrown his meal tray and hygiene pack into the hall.  At 6:21 p.m., Wallace asked Jackson if he could also go to the hospital.  Jackson said he would "see what he could do," but he did not follow up on the request.  Compl. ¶ 128.  At 6:22 p.m., the ambulance left the jail for the hospital; at the request of the ambulance attendant, Jackson called the hospital to confirm that the ambulance was on its way.  At 6:25 p.m., after calling the hospital, Jackson went to check on Wallace again.  This time, he found Wallace hanging by

the neck from the platform of his bunk; he had used the wool blanket provided by Jackson.

Officer Jackson immediately called two inmate trustees for help untying Wallace. Despite his training and in violation of jail policy, Jackson did not attempt to stabilize Wallace, call an ambulance, administer CPR, or try to resuscitate Wallace in any way. Instead, at 6:32 p.m., he called Sheriff Ward, apparently assuming Wallace was already dead.

### III. DISCUSSION

### A. Federal Claims

Count one of the complaint alleges that Officer Jackson showed deliberate indifference to decedent Wallace's medical needs in light of his suicidal intent. This count can be viewed as raising two distinct claims. The first is that Jackson showed deliberate indifference to the substantial risk that Wallace would attempt suicide. The second is that Jackson showed deliberate

8

indifference to Wallace's medical needs by failing to call for medical assistance or treat Wallace in any way after discovering him hanging in his cell. Because Officer Jackson has raised the defense of qualified immunity to these claims, the court will first outline the contours of that defense, before delving into the alleged substantive violations.

### 1. Qualified Immunity

The doctrine of qualified immunity insulates a government agent from personal liability for money damages for actions taken in good faith pursuant to his discretionary authority. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Greason v. Kemp, 891 F.2d 829, 833 (11th Cir. 1990). As established by the Supreme Court in Harlow, the test for good faith or qualified immunity turns primarily on the objective reasonableness of the official's conduct in light of established law: "governmental officials ... generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. If the law was clearly established, the immunity defense fails, since "a reasonably competent public official should know the law governing his conduct." Harlow, 457 U.S. at 818. On the other hand, if the law was not clearly established at the time of the offense, the defendant is entitled to qualified immunity. Id. at 807; Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1503 (11th Cir. 1990).

"To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority" when the alleged violation occurred. Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009). This issue is not in dispute here. "If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was

engaged in a discretionary function, then the burden
shifts to the plaintiff to show that the defendant is not
entitled to qualified immunity." Holloman ex rel.
Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir.
2004). "[T]he plaintiff must ... show that: (1) the
defendant violated a constitutional right, and (2) this
right was clearly established at the time of the alleged
violation." Id. "The judges of the district courts and
the courts of appeals [are] permitted to exercise their
sound discretion in deciding which of the two prongs of
the qualified immunity analysis should be addressed first
in light of the circumstances in the particular case at
hand." Pearson v. Callahan, ___ U.S. ____, ____, 129 S.
Ct. 808, 818 (2009).


### 2. Eighth Amendment Deliberate Indifference

The Eighth Amendment's proscription on cruel and
unusual punishment includes deliberate indifference to a
prisoner's serious medical needs. Estelle v. Gamble, 429

11

U.S. 97, 104 (1976).  It is well settled, however, that the guarantee of the Eighth Amendment is not available to pretrial detainees.  <u>Ingraham v. Wright</u>, 430 U.S. 651, 671-72 n.40 (1977); <u>Tittle v. Jefferson County Com'n</u>, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994).  Rather, the Eighth Amendment serve as a limitation on the government's power to punish only after a formal adjudication of guilt has been entered against the accused.  <u>Ingraham</u>, 430 U.S. at 671-672 n.40.  Because decedent Wallace was a pretrial detainee, the Eighth Amendment does not apply and his deliberate-indifference claims to the extent they rest on this amendment must fail.

### 3. Fourteenth Amendment Deliberate Indifference

#### a. Steps Taken to Prevent Suicide

"'[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth

amendment for convicted persons.'" <u>Belcher v. City of Foley, Ala.</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (quoting <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574 (11th Cir. 1985)).

In a prisoner-suicide case, "the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." <u>Cagle v. Sutherland</u>, 334 F.3d 980, 986 (11th Cir. 2003). "To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregarded ... that risk; (3) by conduct that is more than mere negligence.'" <u>Id</u>. at 987 (internal quotation marks omitted).   There must be a "strong likelihood rather than a mere possibility that the self-infliction of harm will occur." <u>Id</u>.  While "deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing

harm or with knowledge that harm will result." <u>Farmer v.</u>
<u>Brennan</u>, 511 U.S. 825, 835 (1994).

According to the facts alleged, Officer Jackson was
aware of the substantial risk that decedent Wallace would
attempt suicide.  Jackson had been informed that Wallace
had attempted suicide in the past, he witnessed Wallace's
erratic and uncontrollable behavior, he heard Wallace
threaten to commit suicide, and he placed Wallace on
suicide watch.

However, it is also clear that Jackson did not
disregard this risk.  Beyond the basic duty that there be
"some level of action," jailers' obligations to suicidal
prisoners have not been clearly defined.  <u>See</u>
<u>Hollingsworth v. Edgar</u>, 2006 WL 2009104, at *7 (M.D. Ala.
July 18, 2006) (Watkins, J.) ("The Eleventh Circuit jail
suicide cases may not specify exactly what actions
jailers must take to meet a constitutional minimum;
however, the cases make perfectly clear that some level
of action is required.").  Courts have declined to hold

14

that continuous supervision is constitutionally required.
See Popham v. City of Talladega, 908 F.2d 1561, 1565
(11th Cir. 1990) ("Plaintiff ... cites no cases for the
proposition that deliberate indifference is demonstrated
if prisoners are not seen by jailers at all times.").
Likewise, courts have refused to find a constitutional
violation where the inmate was left alone in a cell,
allowed a bed sheet, and checked at intervals of 15
minutes or more.    See, e.g., Williams v. Lee County,
Ala., 78 F.3d 491 (11th Cir. 1996) (rejecting deliberate-
indifference claim where inmate left alone with a bed
sheet for 15 to 20 minutes soon after making a threat of
suicide); Sanders v. Howze, 177 F.3d 1245 (11th Cir.
1999) (rejecting deliberate indifference where inmate,
who had recently attempted suicide with a razor blade,
was left alone with a bed sheet and visually monitored
every 30 minutes).

In this case, Officer Jackson took several steps
designed to prevent decedent Wallace's suicide: he placed

him in a nearby cell, had a conversation with him, and observed him frequently, checking on him at least four times during the 15 minutes from when he was placed in a cell until when it was learned that he had committed suicide. Jackson even asked the trustees to check on Wallace. Therefore, Jackson clearly fulfilled his basic duty to take "some level of action." Additionally, although it may have been negligent to leave Wallace unwatched in his cell with a blanket, this court must find, taking into account both the case law and the facts alleged in this case, that Jackson was not deliberately indifferent to the risk that Wallace would attempt suicide. The motion to dismiss will be granted as to this claim.

### b. Failure to Provide Medical Assistance

### 1. Constitutional Violation

The second claim concerns Officer Jackson's alleged failure to administer CPR, call an ambulance, or provide

16

any medical care after finding Wallace hanging in his cell. "When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference." Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). The Eleventh Circuit elaborated upon this standard in Bozeman v. Orum, 422 F.3d 1265, 1273 (11th Cir. 2005). In Bozeman, several officers failed to provide any medical care to a pretrial detainee who was discovered unconscious and not breathing. Id. The court first explained that "[a] delay in care for known unconsciousness brought on by asphyxiation is especially time-sensitive and must ordinarily be measured not in hours, but in a few minutes." Bozeman v. Orum, 422 F.3d 1265, 1273 (11th Cir. 2005). The court then found that the officers violated the detainee's Fourteenth Amendment right because "the Officers, who knew [the detainee] was unconscious and not breathing and who then failed for fourteen minutes to check [his] condition, call for

17

medical assistance, administer CPR or do anything else to help, disregarded the risk facing [the detainee] in a way that exceeded gross negligence."   Id.

According to the complaint in the present case, Officer Jackson encountered decedent Wallace hanging and unconscious a mere four minutes after having spoken to him.  Yet Jackson did not simply delay in providing care for Wallace; he failed to provide any care whatsoever. Instead, eight minutes later, he called Sheriff Ward, informing the sheriff that Wallace was already dead. Based on Bozeman, this conduct clearly violated Wallace's Fourteenth Amendment right.  422 F.3d at 1273.

### 2. Clearly Established Law

Because the defense of qualified immunity has been raised, the court must now ask whether Officer Jackson, in allegedly failing to provide medical assistance to decedent Jackson, violated a right that was clearly established at the time.  To be clearly established,

"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." <u>Lowe v. Aldridge</u>, 958 F.2d 1565, 1570 (11th Cir. 1992). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent." <u>Id</u>.

In <u>Bozeman</u>, the court noted that it was clearly established that "'an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.'" 422 F.3d at 1273 (quoting <u>Lancaster v. Monroe County, Ala.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997)). The court then explained that the "decisional language from such cases as <u>Lancaster</u> obviously and clearly applies to these

extreme circumstances." <u>Id</u>. "[T]he Officers knew Haggard was unconscious and not breathing and--for fourteen minutes--did nothing. They did not check Haggard's breathing or pulse; they did not administer CPR; they did not summon medical help." <u>Id</u>. As such, "the Officers' total failure to address Haggard's medical need during the fourteen-minute period violated Haggard's constitutional rights, which violation should have been obvious to any objectively reasonable correctional officer." <u>Id</u>.

This conclusion applies with equal force to Officer Jackson's conduct. The complaint alleges that Jackson found decedent Wallace unconscious and hanging in his cell, yet Jackson did not check Wallace's pulse, perform CPR, or summon medical help. Under these alleged extreme circumstances, Jackson violated decedent Wallace's clearly established constitutional right. This failure-to-provide-medical-assistance claim will go forward, and

Administratrix Wallace will be allowed to pursue
discovery on it.


### B. State-Law Wrongful-Death Claim

Officer Jackson asserts that the state-law wrongful-
death claim against him should be dismissed because he
has absolute immunity under state law.  Article I, § 14,
of the Alabama Constitution of 1901 provides that, "the
State of Alabama shall never be made a defendant in any
court of law or equity."  Jackson therefore claims that
§ 14 makes him "absolutely immune to any claim based on
Alabama law."  Mot. Dismiss at 19.

"When determining whether a State interest in an
action against a state official or employee in his or her
individual capacity is sufficient to trigger the immunity
granted by § 14, [Alabama] distinguish[es] between the
standards applied to those state agents or employees
whose positions exist by virtue of legislative
pronouncement and those who serve as the constitutional

officers of this State." Ex parte Davis, 930 So.2d 497 (Ala. 2005)). In Alabama, the county sheriff is a constitutional officer pursuant to § 112 of the Alabama Constitution of 1901, which provides that "[t]he executive department shall consist of ... a sheriff for each county." King v. Colbert County, 620 So.2d 623, 625 (Ala. 1993).

The Alabama Supreme Court has extended § 14 immunity to deputy sheriffs despite the fact the position is not recognized in the constitution itself. See, e.g., Ex parte Blankenship, 893 So.2d 303 (Ala. 2004). The court explains that, under Alabama law, "'the acts of the deputy sheriff are the acts of the sheriff. The deputy sheriff is the alter ego of the sheriff.'" Hereford v. Jefferson County, 586 So.2d 209, 210 (Ala. 1991) (quoting Mosely v. Kennedy, 17 So.2d 536, 537 (1944)). Jackson argues that this alter-ego status likewise applies to jailers, because "jailers carry out the Sheriff's duties in the County jail," and there is "no reasonable basis

for distinguishing claims against the jailers from claims against the sheriff." Mot. Dismiss at 19, citing Lancaster v. Moore County, 116 F.3d 1419, 1430-31 (11th Cir. 1997).

The Alabama Supreme Court just recently answered the question of whether jailers could claim absolute immunity. In Ex parte Shelley, ___ So.2d _____, 2009 WL 2997498 (Ala. 2009), the court held that jailers do not qualify for absolute immunity under the State's constitution. The court explained that "a jailer working for a sheriff's office cannot properly be viewed 'in legal contemplation' as 'an extension of the sheriff' or as 'one officer of the sheriff"; therefore, the court did "not consider a jailer ... to be an alter ego of the sheriff as are deputy sheriffs." Id. at *8. In light of this ruling, Jackson does not qualify for § 14 absolute immunity. (Officer Jackson has not asserted the defense of 'state-agent' immunity recognized in Ex parte Cranman, 792 So.2d 392 (Ala. 2000).)

## C. Punitive Damages on Federal Claim

"'[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Lambert v. Fulton County, Ga., 253 F.3d 588, 598 (11th Cir. 2001) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).

Jackson argues that punitive damages are not appropriate here on Administratrix Wallace's remaining federal claim because she has not specifically claimed his behavior to be 'evil' or 'recklessly or callously indifferent.' This argument is unavailing; the words 'evil' and 'recklessly or callously indifferent' are not talismanic. The complaint contends that Jackson behaved reprehensibly and with deliberate indifference to Wallace's medical needs and sets forth adequate alleged facts to support that contention. Therefore, the claim

**24**

suffices under <u>Lambert</u> and Jackson's motion to dismiss the claim for punitive damages will be denied.  <u>See,</u> <u>e.g.</u>, <u>Riley v. Camp</u>, 130 F.3d 958, 980 (11th Cir. 1997) (affirming award of punitive damages in deliberate indifference case); <u>H.C. by Hewett v. Jarrard</u>, 786 F.2d 1080 (11th Cir. 1986) (reversing district court's denial of punitive damages in § 1983 claim involving denial of medical care to juvenile inmate); <u>Gibson v. Moskowitz</u>, 523 F.3d 657 (6th Cir. 2008) (allowing recovery of $ 3 million in punitive damages when inmate died as result of jail psychiatrist's deliberate indifference to medical needs).

***

Accordingly, for the above reasons, it is ORDERED as follows:

(1) Defendant Mark Jackson's motion to dismiss (doc. no. 6) is granted as to plaintiff Melissa Wallace's 42 U.S.C. § 1983 claims to the extent they rest on the Eighth Amendment claim and as to her § 1983 Fourteenth

25

Amendment claim for deliberate indifference to the risk
that decedent Tony Keith Wallace would commit suicide.

(2) Said motion is denied as to plaintiff Wallace's
§ 1983 Fourteenth Amendment claim for deliberate
indifference to decedent Wallace's medical needs after
defendant Jackson found him hanging in his cell; as to
her state-law wrongful-death claim; and as to her request
for punitive damages on her remaining federal claim.
Plaintiff Wallace may proceed with discovery on these
matters.

DONE, this the 28th day of September, 2009.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE